in this room today. Don't worry about it. I mean, you can't cool it off. All the utilities in this building are ancient, so we will live with it. But anyway, glad to see you all here. We only have two cases this morning, but we are going to run them according to our time schedule, which means that when the yellow light comes on, you have two minutes left in your argument. When the red light comes on, we ask you to immediately conclude your remarks unless you're answering a question from the court. We are familiar with the briefs and record excerpts. We have not read the entire record, and therefore, we very much appreciate record citations when those are available. So the first case of the morning is Sampy v. Rabb, No. 2430121, and we'll hear from Mr. Hensley. May it please the Court, Brant Hensley for the appellate to Mr. Sampy. Your Honors, when Mr. Sampy was handcuffed with his arms behind his back and pushed face down against a police car, he kicked his leg backwards, and this kick hit an officer in the shin. This was the sole basis of Mr. Sampy's battery conviction, but this case is about two uses of force that occurred after that kick. The first, when an officer grabbed Mr. Sampy's legs, held them in the air, and then yanked them backwards so that he crashed face first into the concrete. The second, when officers thereafter knelt on Mr. Sampy's back and neck. Mr. Sampy's excessive force claims regarding these two uses of force are not barred by HECC because a plaintiff can succeed on excessive force claims regarding uses of force where the force is used after consummation of the plaintiff's criminal act. There are two points that go to the heart of this issue. The first is that HECC does not bar excessive force claims where, as here, the force is used after consummation of criminal act. The second is that the district court erroneously found that HECC did bar Mr. Sampy's claims only because it conflated his battery conviction with a conviction for resisting arrest and because it misapplied HECC to certain statements made by the criminal court. To my first point, HECC only bars a claim if success on that claim necessarily invalidates an underlying conviction, but if the claim can truthfully coexist with a conviction, it must be allowed to proceed. One instance where an excessive force claim can truthfully coexist with a conviction is where the force is used after consummation of the criminal act because in that circumstance, it can both be true that the plaintiff committed the criminal act and that the force used afterward was excessive. There's no necessary contradiction. This court's decisions support this rule. For example, in Bush v. Strain, there the plaintiff was convicted of resisting arrest but alleged that after consummation of her criminal act, so after the resistance, the officer pushed her face into a car windshield. On page 498 of that decision, this court set forth the rule it was going to apply to determine if HECC barred her claims for excessive force. It stated, quote, a claim that excessive force occurred after the arrestee has ceased his or her resistance would not necessarily imply the invalidity of a conviction for the earlier resistance. And then accordingly applied that rule on page 500 and said, quote, because plaintiff has produced evidence that the alleged excessive force occurred after she stopped resisting arrest, a favorable verdict on her excessive force claims will not undermine her criminal conviction. So because the force was used after consummation of her criminal act, HECC did not bar her excessive force claims. Another example is Ballard v. Burton. There the plaintiff was convicted of assault on officers for pointing a rifle at officers and shooting it in the air. But he alleged that the officers used excessive force by shooting him afterward. There the court found that HECC did not bar his excessive force claims because before the force was used, quote, plaintiff's behavior satisfied the elements for simple assault against an officer, unquote. Also, of course, you're right that if the two can be separated factually, temporally, whatever, you potentially have a claim. It seems to me that the battery charge may not divide up the facts of the battery in the way that you do. As I understand what the city judge, whatever the title was, found is that the grabbing of the legs and the pulling of your client off the hood of the vehicle was more or less simultaneously with the kick. Would you agree that that's what was presented to the city judge and what the judge found? No, no, we wouldn't agree with that. In fact, if we go to the record at page 1093, that is where the city judge sets forth its factual findings. But what the city judge found and what the district court relied on, it was the city judge statement that the kick and the force occurred, quote, within the same span of 30 seconds. But within 30 seconds does not mean simultaneous for purposes of HECC. For example, in Bramlett v. Buell, there the court was confronted with a similar situation but found that force used even seconds after a criminal act was not barred by HECC. Is that a 5th Circuit case? It's an Eastern District of Louisiana case. There the officers asked the plaintiff to get out of his car. He instead accelerated towards the officers and they shot him, which the plaintiff alleged was excessive force. But on page 4 of that decision, the court found HECC did not bar the claims because notwithstanding the fact that the entire matter transpired in a matter of seconds, it is an established fact that all of the elements necessary to complete the aggravated battery occurred before the officers shot plaintiff. Well, if that wasn't ruled on by the 5th Circuit, it's really not binding. That's true, but it is persuasive. In the Bush case, I noted we did not have the benefit of body cams. Here we have body cam, which heavily influenced the judge. In Bush, the lady arrestee had two witnesses who corroborated her version of the events, making a legitimate fact issue. Here we have body cam, and it looked pretty—it looked to me as if the kicking and the resistance continued straight on from the time he was being taken to the truck, placed on the truck, started kicking. They say, don't kick. Then in a few seconds, he's still kicking on the ground and they're still saying, don't kick. So I find it difficult to separate those two events, at least. So whether he's—there's two issues there. Whether he was continuing to resist might be relevant to an excessive force determination, determining whether the force was excessive, but not to the heck question that's in front of this court. But also, we have to interpret— Well, resisting arrest is resisting arrest. And technically, it was battery, correct? He was convicted only of battery. And on page 1093, we can see exactly what he was convicted of. Or 1093 of the record, sorry. So there, starting on line 13, the court says, it's very obvious that your legs kicked out. So what he was actually convicted of was only kicking his legs out. Only that—the one kick. No continued kicking. And also, we have to interpret video evidence in the light most favorable to Mr. Sampy. And in fact, after he is pulled to the ground, he disappears from the camera view. There is no resistance shown on the video. As Your Honor noted, they do say, stop kicking. But in order to determine that that means he actually was kicking, we would have to make inferences in favor of the defendants. One, that they were referring to further kicking and not the initial kick. Well, Sampy did not deny that he was still kicking. He said—eventually, he says, get off my throat, or neck, or whatever it is. And they say, stop kicking. Will you stop kicking? Okay, he says. That's true. He does say, all right. But at the time, he had officers on his back and his neck. And you can hear the distress in his voice. But okay implies that it doesn't—it's an admission. But they could have been referring to the initial kick. And he does admit that he did kick. Oh, come on now. It was mere seconds. Oh, come on now. And I think interpreting the video in the light most favorable to Mr. Sampy, that's an inference that we have to make. I don't think there's any such inference that we have to make from that video. I mean, the words, you know, the dialogue speaks for itself, it seems to me. Kicking. Don't—you don't say, stop kicking, after the guy's on the ground and he theoretically kicked you once when he was on the hood of the car. And again, the officers may have been speaking because they knew that they were on camera. But we do have to make inferences in Mr. Sampy's favor. And under Heck, we're worried about undermining his conviction. And what he was convicted for is only the one kick, only kicking his legs out once. So if the force is— Where does it say once in the judge's finding? It says, it's very obvious that your legs kicked out. And that doesn't mean once. But it can mean once. And I'm really asking you to clarify, because I don't remember. Did the policeman imply that he had only been kicked once? I don't remember exactly what the policeman said, yes or no. Okay, I couldn't remember for sure. But the crucial issue is that Heck only bars necessary contradictions between the claims and the underlying conviction. But what cases are ruling on necessary contradictions? I'm sorry, could you rephrase that? Well, could you rephrase? You say Heck only bars necessary contradictions. What cases turn on fine distinctions about necessary contradictions? Well, Bush v. Strain is one. Well, not really. The court says that her claims that the excessive force occurred afterwards, and after she stopped her consummation of her criminal act, was not contrary to, quote, the fact findings essential to her criminal conviction are not inherently at odds with this claim. So they have to be inherently at odds. There has to be a necessary contradiction. So if there is a way to interpret them, to coincide with them, there is not a necessary contradiction. And here, it is the most natural interpretation to say that his legs kicked out. It was just one kick. And that is perfectly consistent with Mr. Stampy's timeline of events. But these cases, Bush and Ballard established that Heck does not bar claims for excessive force after consummation of a criminal act. There are similar cases out of other circuit courts. And in fact, at least according to our research, every circuit court that has analyzed the issue squarely has found that Heck does not bar such claims where the force is used after consummation of a criminal act. Brent Getty v. Horton out of the Seventh Circuit is a great example. There the plaintiff was convicted of battery of an officer for punching an officer several times, but alleged that after the punching, the officers kicked him. Well, I don't think anyone here is disagreeing with what the cases say. I think that, again, it just comes down to question what you see from the video. Right. And again, I think it just comes down to that we have to interpret the video in the light most favorable to Mr. Stampy, and we can't make inferences in defendant's favor. And there is no, I believe the language is that it has to directly contradict or blatantly contradict, at Tucker v. Shreveport, it has to blatantly contradict the plaintiff's version or timeline of events. And here it doesn't show Mr. Stampy at all. It doesn't blatantly contradict his version of events that there was just one kick. And that's consistent also with what the criminal court found. What about the second event? The second event is where the fellow put, what, his knee on the neck? Is that what you said? Yes. There were multiple officers. One was on his neck and back, and the other was on his leg. And that was even further after the- Well, putting his, something on his leg is not excessive force. But it all has to be taken in conjunction with the knee on the neck and on the back. And again, the question before the court is not whether the force was excessive or whether what the officers did was right or wrong. It's only if Heck bars Mr. Stampy's claims, whether he can succeed- Well, say Heck did not bar it. At that point, is it still, can you say that it's excessive force? The knee on the neck, the knee on the leg? Yes. And how was he injured by the knee on the neck or the knee on the leg? Mr. Stampy alleged significant injuries. Well, yeah, the injury was when he got pulled onto the ground. Well, he also alleged that he suffered from a herniated disc, a dislocated shoulder, as well as PTSD and short-term memory loss. And, for example, in Alexander v. City of Round Rock, the court found similar injuries, quote, emotional and psychological injuries, injuries to the mouth, to be sufficient to- What kind of case was that? That wasn't a question of attenuated excessive force, was it? It was a question of excessive force, I believe, yes. Well, obviously, okay, never mind. All right. So, yes, that is a legitimate excessive force claim. But the district court erred, going to my second point, the district court erred by finding that Mr. Stampy, or treating Mr. Stampy's underlying conviction as one for resisting arrest when he was only convicted of battery. And it also erred by misapplying heck to certain statements made by the criminal court. When the district court was undertaking its heck analysis, it correctly found that heck did not bar claims for excessive force or forces used after consummation of a criminal act. But it incorrectly found that the criminal act at issue was resisting arrest, not battery. But Mr. Stampy was never convicted of resisting. He was convicted only of battery for this one single kick that we see on page 1093. What do you do with our case De Leon v. City of Corpus Christi? De Leon is actually a good example. It also supports the rule, along with Bush and Ballard, that we propose. There, the main issue in De Leon was that, this is a quote from page 656, the complaint maintains that plaintiff did nothing wrong and stated, quote, he committed no crime. So this is a necessary contradiction between the allegations in the complaint and the underlying criminal act. That was the main issue there. But De Leon noted that the claims there are not, quote, that the police used excessive force after he stopped resisting arrest. So after consummation of the criminal act. Here, Mr. Stampy, your complaint alleges Mr. Stampy did not resist the officer's arrest. The complaint says that during a specific sequence of events. It says he didn't resist at that time. And again, under Bush v. Strain, we have to read these statements in context. And in context, that just means he didn't resist at that moment. But he does later acknowledge the kick. So it couldn't mean that he never resisted in any way. And in fact, even, I say I'm about out of time. But, we ask that the court reverse the lower court's judgment as to the Fourth Amendment claims regarding these two uses of force. And also the attendant First Amendment and bystander claims. Okay, thank you. Thank you. You have opportunity for rebuttal. Ms. Ravelet. Good morning, your honors. And may it please the court. My name is Joy Ravelet. And I'm here representing the Defendant Police Officers and Lafayette Consolidated Government. This case is one of the more unique ones. Because it kind of takes this court's prior cases. And with the video, gives the court a whole lot more. In addition, the criminal court judge very painstakingly went through the analysis. Even though he wasn't charged with resisting, understanding conceptually that a battery on a police officer will entail some resistance. I think that the resistance is the lesser of the greater battery here. So I think that the criminal court judge really took his time to go through the analysis. And he had some findings with regards to the time. Do we have to, I mean, I don't recall having to analyze or parse the conviction of a defendant who's claiming a no-heck bar. Do we have to go through the elements of battery or the elements of resisting arrest? Or is it more like a transactional question? I believe, Your Honor, it's transactional. Because, do we have any case on it? I don't think so. I cited a case in brief, Your Honor, that states that the charge itself is not determinative for purposes of heck. Heck does not require exact identity of the arresting offense and the offense of conviction. That's cited in Hudson as well as Arnold. And then recently, the United States Supreme Court in Barnes v. Felix on May 15, 2025, number 23-1239, re-instructed that we got to look at the totality of the circumstances. So this parsing out second by second of was the battery consummated before Mr. Sampi was removed from the hood and escorted to the ground. Those step-by-step, second-by-second analyses in the context of this case really would put an onus on law enforcement to be superhuman and to think, oh, he kicked me. The battery's completed. I may not use any force to overcome or to try to get this subject subdued. Counsel, you're talking about the practicalities, and you may be right on how that plays out here. You're not denying, though, that it is necessary at times to separate when the heck conviction is finished and when additional action by the police are occurring. And at that time, excessive force may be in play. There is a point. Okay, so accepting that, I'm sorry, but accepting that, that's all I needed from you. What do we know? What would you point us to from what you call the criminal court, city court, whatever it is? How can we decide what exactly the district that judge was including as the factual basis for the conviction? If your honors refer to the record at pages 1090 to 1094, that is when Judge Saloom outlined everything. Right. It's long commentary from him, and I think there may be a longer one someplace else, but what is in there that would tell us what events was he being convicted for committing? He was convicted for the kick because the judge said it's very obvious that simultaneously Officer Rabb grabbed your leg, and it is clear on the video that someone yells, you like to kick. And then obviously Officer Rabb, after he pulls you off the car and put you on the ground the second time is when he clearly says, stop kicking. So if we look at Hudson and we look at Price and we look at this court's authority, on conceptually distinct. They're still in the process of making the arrest, trying to conduct a safety pat-down, and overcoming resistance that is seen on the video. And a battery occurs in there in the meantime. So are we going to say heck doesn't apply here because he wasn't charged and convicted of resisting? Hudson was a battery on a police officer. He's already been to trial on a third event, right? Didn't he go to trial on something else? Yes, ma'am. It was what the district court ruled in the memorandum ruling on our motion to dismiss, the second instance of kneeling by Officer Rabb. She said because you couldn't see what happened that prompted that course of action. And they went to trial.  And he lost. Correct. So now he's trying to piecemeal it and come back. Well, not piecemeal exactly, but try again. Try again. For the same event. Correct. I presume the jury saw all the body cam videos at the first trial. Correct. The court was very lenient. It was difficult to say the least to try it because we had other uses of force that were not going to the jury. But the court did allow both sides to present the entirety of the interaction to the jury. And the only question to the jury was whether the last instance of Officer Rabb kneeling constituted excessive force and whether there was bystander liability. And they categorically answered no. I think it's very logical that an analysis of resistance and battery go hand in hand, whether or not it's charged. The district court here said the issue is one of timing. And I think that that was very poignant and case appropriate considering this court's jurisprudence. There are no allegations in the complaint that yes, I committed a battery and then I stopped resisting. I was subdued. And then the officers did X, Y, and Z. The allegation instead is I didn't resist arrest. It was found and it is seen on video. We have the benefit here of both the criminal trial transcript, the criminal judge's rulings, and video in our own eyes. And you could see the resistance. It was not just passive. It was active. To say that the battery was a singular and finite event improperly collapses the Supreme Court's most recent ruling in Barnes. If we can't limit it to the kick, we can't limit what we analyze as to the reasonableness or whether it's barred, what Hudson says is, and the cases after Hudson say is, we got to look at the entirety of this and we got to look to see at the time the force was used, was the subject subdued and ceased resisting? And if the answer is no, there's not going to be excessive force for overcoming that resistance. Now, can there be a case, you know, if one of the officers in response to this had just simply shot Mr. Sampy, perhaps that would be a stronger argument. Measured ascending use of force. These were empty hand techniques. Nobody tased. Nobody used an impact weapon. Nobody used fists and punched. No one kicked. This was a maneuver to get him on the ground. And then when they were... You hear the, are you going to stop kicking? OK. Stop. Calm down. They're trying to conduct a safety pact. And that's all contained in the criminal trial transcript that is referenced in brief. And in this court's unpublished decision in Price, there was a battery on a police officer case and it was a struggle that covered 60 to 80 yards, lasted as long as 15 to 20 minutes, and involved much more than a single incident in one discrete location. So I think that the attorneys in Price tried to do the same thing here. Let's parse it out. Let's look at each individual thing and say, you're good here, but you're not good there. Was Mr. Sampy subdued? Had he ceased his resistance? The video implies no. The criminal trial implies no. More than implies. It ruled no. So I don't think that you could, that plaintiff could come into court now and argue to the contrary. With regards to the injuries... Ms. Reveille, before you leave where you are now, you made a comment that I think puts the finger on, to me, the central issue in this kind of case. You made a comment, maybe it had been excessive force and not covered by heck if the officer had shot someone after getting kicked. It does seem to me that what is not actionable because of heck, when the law enforcement officers are apprehending, arresting somebody for the offence that is covered by heck, that there are going to be actions there that can arguably be excessive and the plaintiff would want to sue on. But heck is going to capture a fair number of those. You have suggested that an extraordinarily excessive action by the police to apprehend or stop the offence might be actionable. And I'm wondering temporally just how that might also play out. When has the battery ended and their apprehension of him, their control of him ended? Are you saying until he has stopped resisting, they are still covered by heck? Where do we draw the line? Because certainly at some stage, we revive the case law and make it applicable that excessive force used or other actions by the police that commit that are perhaps actionable after the criminal offence can still be sued on. I think maybe a good cut-off would be at the point that the plaintiff stops resistance and is subdued. I think everything that leads up to there, if it's a resisting on officer charge, a battery charge, assault on an officer, the other types of charges, you know, under Texas and Mississippi law as well as Louisiana law that puts an officer or others in danger, I think that the conviction is going to cover through the time that the person is properly subdued and resistance ceases. Because under Louisiana law, Code of Criminal Procedure Article 220, that allows a police officer to overcome both actual and threatened resistance. And that's during the course of a legal arrest, which we know here this was a lawful arrest. So there has to be some breathing room and it can't be immediately after the completion of the battery. I mean, there has to be a reasonable time to effectuate the arrest in response to the battery. It's not just time, it seems to me, getting back to your example. There are certain things, depending on the nature of the offense, the law enforcement cannot do to apprehend the person. If it's a nonviolent crime or whatever else, there are limitations on getting back to shooting or something almost as severe. So it does seem to me it's not just time, it's also the nature. And I'm sure you would say that everything that was done here would not be excessive in apprehending them for the battery. And I think it's time and the nature of the force, of course. But under the facts of this case, we're not talking about extreme uses of force. We're talking about pulling him to the ground. He did have an injured chin, that's been conceded, that's been no secret. But when he was asked at the civil trial specifically what it was that was injured when Officers Rabin-Rao got on him, you know, got on him, he says mounted, what was injured? He stated nothing. He stated the chin landed on a bottle cap and it spread the cut a little wide open, is what he testified to. That's at record 3712 to 3714. It is a little confusing because we're dealing with an appeal from a motion to dismiss, right? Correct. So we technically, all this evidence, I mean, all this other stuff is in the record, but it wasn't necessarily incorporated in the complaint, right? Correct, it was not. But, you know, for purposes of this appeal and purposes of our alternative argument for entitlement to qualified immunity, I think that Your Honors could make a just ruling on the entirety of the record at this point because why go back to engage in a legal fiction of a song and dance? I mean, if you just looked at it in a narrow sense, it would be the complaint and the video. Correct. And the conviction. And, you know, we would take judicial notice of the record of the conviction because he had to refer to it. But, I mean, the trial just proves to me that Mr. Sampi is wasting his time, but that isn't the question before us. So, anyway, I just think it's a little more confusing than normal. And it is, and I think, too, that the criminal trial transcript was properly introduced and considered on the motion to dismiss. It was not objected to. It would be a matter of public record. Correct. And so I think that in addition to the video and the conviction were properly considered in light of the allegations made in the complaint. So the allegations made in the complaint never say force was used on me after I stopped resisting. It basically complains of the entirety of the interaction with the police. Well, he says he was fully immobilized. When he kicked. When he kicked. Right. So there, too, you know, Scott v. Harris allows the court not to engage in legal fictions but to consider the factual allegations in light of what's depicted on the videotape. Well, we have the videotape and we have also the criminal court factual findings on that matter. So I don't know that you could be fully immobilized and commit a battery at the same time or continue resistance. And, you know, consequentially, Your Honors, if you find that the head bars the force claims here, there would be no separate independent grounds for bystander liability and then the First Amendment retaliation. Just because you yell at the cops something negative while they're lawfully arresting you, it does not turn it into a retaliatory arrest nor a retaliatory use of force. You could hear the words that are being said while he's on the hood, while he's immediately on the ground thereafter. And I don't know what is identifiable as his free speech right that was supposedly retaliated against. That is not clear at all in the Second Amendment complaint. With regards to the nature of the battery and the fact that Officer Rob was not injured, this Court has found that battery on a police officer is a serious offense, despite it being a misdemeanor. I think that careful consideration as to the totality of the circumstances and the fact that resistance is but a subset of battery, I think it's appropriate to consider the continued resistance here. And if the Court doesn't have any other questions... No, ma'am, we have your argument. Thank you very much, Your Honor. All right. Okay, Mr. Hensley. I just have a quick rebuttal on three points. The first is Mr. Sampy's comment in the complaint that he was immobilized. Again, we have to interpret the facts alleged in Mr. Sampy's favor. And in the immediately preceding paragraph, he states that he was pinned down by his upper body onto the police car. So he was immobilized in that fashion, but that doesn't necessarily mean that he didn't kick. Second, the defendants have argued that you can't do a second-by-second analysis when determining excessive force. But in Roque v. Harvell, this Court teaches us that that is appropriate. There, a man was waving a gun in the air, an officer shot him three times in quick succession. The Court found that the first shot was entitled to qualified immunity and was not excessive, but the second and the third were not entitled to qualified immunity. So it is appropriate to undertake a fine second-by-second analysis in looking at the force used by officers. Finally, I would like to reemphasize something you noted, Judge Jones, that we are here on a motion to dismiss, and I do understand the Court's view that the video might undermine certain allegations in the complaint, but I would respectfully submit that this is a factual issue and we should be careful about using video on a motion to dismiss to resolve factual disputes. Also, in any event, there are two distinct uses of force. The second use of force, the kneeling on the back and the neck, is not visible on video. And with that, I... Okay. Thank you. All right, sir, thank you. All right, we'll call...